## HARRISON TURLEY *et al.*

### *v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed February 20, 1901.*

1. CRIMINAL LAW—*intent to rob must be clearly proved.* One indicted for assault with intent to rob can only be convicted of the offense charged, by proof the assault was made with the specific intent.

2. SAME—*when charge of intent to rob is refuted.* The charge of assault with intent to rob is refuted where it is shown that nothing of value was taken from the person of the party assaulted, and there is an entire absence of proof of any attempt to rob.

3. EVIDENCE—*a conversation showing willingness to commit another crime is inadmissible.* A conversation between the accused and the witness tending to show a willingness on the part of the accused to commit another offense entirely distinct from the one for which he was indicted is inadmissible.

4. INSTRUCTIONS—*when an instruction in criminal case is erroneous.* An instruction for the People, in the trial of defendants jointly indicted for assault with intent to rob, is erroneous which authorizes the jury to find the defendants guilty if either of them, by the advice and encouragement of the other, committed the assault in the "manner and form" as charged in the indictment, since the manner and form of the assault cannot be said to include the intent with which it is charged to have been made.

WRIT OF ERROR to the Circuit Court of Logan county; the Hon. JOHN H. MOFFETT, Judge, presiding.

J. A. HORN, and BLINN & HARRIS, for plaintiffs in error:

Under an indictment charging an assault with intent to rob, the intent to rob is a material allegation, that must be proven either by direct proof or by circumstances from which such an intent is necessarily inferred. *Garrity* v. *People*, 70 Ill. 83.

Proof of a conversation by which one of the defendants tried to induce a witness to commit another similar offense to the one charged in the indictment is not admissible. Wharton on Crim. Law, sec. 635; *Baker* v. *People*, 105 Ill. 452; *Parkinson* v. *People*, 135 id. 404; *Jansen* v. *People*, 159 id. 443.

The improper admission of this kind of evidence is a reversible error. *Shaffner* v. *Commonwealth*, 72 Pa. 60; *Jansen* v. *People*, 159 Ill. 443.

E. C. AKIN, Attorney General, PETER MURPHY, State's Attorney, (ANDREW L. ANDERSON, of counsel,) for the People:

It is only when the Supreme Court is able to say, from a careful consideration of the whole of the testimony, that there is clearly a reasonable and well-founded doubt of the guilt of the accused, that it will interpose on the ground that the evidence does not support the verdict. *Rafferty* v. *People*, 72 Ill. 37; *Steffy* v. *People*, 130 id. 98; *Gilman* v. *People*, 178 id. 19; *McCoy* v. *People*, 175 id. 224; *Gainey* v. *People*, 97 id. 270.

Where the jury has been properly instructed, and where the testimony is contradictory and irreconcilable, a new trial will not be awarded. *Connelly* v. *People*, 81 Ill. 379; *Kightlinger* v. *Egan*, 75 id. 141; *Scharf* v. *People*, 34 Ill. App. 401; *Treishel* v. *Weise*, 38 id. 406, and authorities there cited.

Mr. JUSTICE WILKIN delivered the opinion of the court:

At the September term, 1900, of the circuit court of Logan county an indictment of three counts was returned against the plaintiffs in error, charging them, jointly, with having made an assault on one Henry O. Haynes on August 23 of that year, with the intent to rob him by stealing from his person certain money, charged in one count to be of the sum of $75 and in the other two $70. At the same term of the court they each entered their plea of not guilty, and were tried, convicted and sentenced to the penitentiary. To reverse that judgment of conviction this writ of error has been sued out.

Henry O. Haynes is a farmer living in the village of Lake Fork, in said Logan county, six miles from the city of Mt. Pulaski. Harrison Turley worked on a farm, for a brother-in-law, near the village of Cornland, also in that county, some ten miles from Mt. Pulaski. The other defendant, Carl Turley, lived with his parents on a farm in Macon county, about fourteen miles from Mt. Pulaski. The latter is a nephew of Harrison Turley, being at the time of the alleged assault not quite twenty-one years of age, while Harrison was twenty-eight years of age. The parties were all in Mt. Pulaski on the 23d day of August. Harrison Turley had known Haynes for several years and their relations were friendly. He and Haynes were together more or less during that day. Carl Turley did not know Haynes. He and his uncle were together in Mt. Pulaski during that day. Haynes had delivered some oats in the city that morning and previous thereto, and received about $85 in money for the same, and the evidence shows that he became intoxicated during the forenoon and afternoon, and exhibited at different times considerable money. While in the state of intoxication he was found in the afternoon, about four o'clock, sitting against a fence in an alley back of a saloon, but soon after got the team with which he had brought in a load of oats

and started back to his home. On the road, several miles
from Mt. Pulaski, he was found in his wagon in a dazed
condition, resulting from a blow upon the head, which
appeared to have been inflicted with a club or bludgeon
of some kind.   A stick of wood—a part of a fence rail
in appearance—was found on the road, which some of
the witnesses testified had the appearance of blood upon
it, and from that point leading off into a cornfield were
foot-prints of a man.   The defendants were seen driving
on the same road from the city of Mt. Pulaski, and some
distance from the place where the assault appeared to
have been made one of them had gotten out of the buggy,
the other driving the horse.   No one saw the assault com-
mitted, and Haynes himself could only say, "I got a lick
just like a flash," and knew nothing more for a time.   He
does not pretend to identify either of the defendants as
the person who struck him, nor does the evidence show
them to have been near the place where the assault was
made, if it was made.   Neither was there any evidence
tending to identify the tracks leading into the field as
being those of either of the defendants.   Haynes, when
found, stated that some one had struck him, but expressed
no opinion as to who did it.   The defendants testified in
their own behalf, and as to the fact that one of them had
gotten out of the buggy on the road said it was to answer
a call of nature, and they both testified positively that
they did not commit any assault whatever upon Haynes
and knew nothing of it.   They put their characters in
issue upon the trial and introduced evidence to the effect
that their reputations were good, and there was no evi-
dence to the contrary.   When Haynes was found after
the assault he had upon his person $75 in money; also
his watch, and an order which Harrison Turley had given
him that day on one Kennedy for two dollars, and it was
not claimed by Haynes, or shown by any testimony what-
ever, that anything which he had upon his person was
taken or in any manner disturbed.

The evidence is quite voluminous as to details in regard to Haynes leaving the city and being seen on the road towards his home, and as to the defendants following or driving in the same direction behind him, but we do not deem it necessary to give an analysis of such testimony.

While it may be conceded that the evidence on behalf of the People sufficiently established the fact that an assault was made upon the prosecuting witness, there is, to our minds, no such evidence as the rules in criminal cases require that these defendants made that assault. But for the purposes of this opinion even that fact might be conceded and still the judgment of conviction should be set aside for the entire absence of proof that the assault, by whomsoever committed, was with the intent to rob. The law in such cases is that the intent, being the gist of the crime, must be specifically averred and satisfactorily proved. (1 Wharton on Crim. Law,—10th ed.— sec. 641.) In other words, the charge being of an assault with a felonious intent, the defendants could only be convicted of the offense charged by proof that the assault was committed with the specific intent. The fact being admitted that nothing of value was taken from the prosecuting witness or disturbed upon his person, and there being an entire absence of proof that an attempt was made to do so, the charge of an assault with such an intention is rebutted.

The only evidence in the record which could by any possibility be construed as tending to show an assault with the felonious intent was that of a witness named Rowe. He testified that on that day, August 23, he met the defendant Harrison Turley on one of the streets in Mt. Pulaski, and the following conversation took place: "He asked me if I wanted to make $15 or $5 or $10, and I says, 'Certainly, you have got to cite me anything like that,' and he said there was a fellow back here in the alley that has got some money. He said if he could get

him out some place.   I says, 'If you will bring him ,over
to the barn we will get it.'   He says, 'If I had him out I
could get it myself;' and as I started off he said, 'A fel-
low from Cornland,' and that was all, and I took it for a
joke and left and went on."   This testimony was objected
to by counsel for the defendants, which was overruled
and an exception taken.   There was also a motion to
exclude the evidence, which was likewise overruled and
an exception taken.                                    .

It will be seen that this testimony is in no way con-
nected with the offense here charged.   It is not shown at
what time the conversation took place, that Henry O.
Haynes was at that time in the alley, or that the conver-
sation had any reference whatever to him, but the state-
ment to the effect that the party who had the money was
from Cornland tends to show that Harrison Turley, if he
made the statement, (which he swears he has no recollec-
tion of,) had reference to some other person than Haynes.
So understood, the evidence was clearly incompetent, as
tending to show a willingness on the part of Harrison
Turley to commit not this particular crime but another
and distinct offense, and under all the rules of evidence
to admit it would be reversible error.   We think, in any
view of the law, the evidence was irrelevant and incom-
petent and should have been excluded.

The court gave, at the instance of the People, the
following instruction:

"And the court further instructs the jury, that if you
believe, from the evidence, beyond a reasonable doubt,
that the defendants, Carl Turley and Harrison Turley,
followed the prosecuting witness, Henry O. Haynes, out
into the country from Mt. Pulaski, and that either of
these defendants, by the advice and encouragement of
the other, committed the assault in manner and form
as charged in the indictment, then you should find the
defendants guilty."

Manifestly, if the jury followed this instruction they convicted the defendants, not because they believed, beyond a reasonable doubt, that the assault was committed with the intent to rob, but because they believed that the defendants committed the assault in manner and form charged in the indictment. It cannot be said that the manner and form of the assault included the intent with which it is charged to have been made. The crime here charged consisted of two elements: First, the assault; second, the intent to rob. Now, this instruction clearly informed the jury that if they believed, from the evidence, that the first element was committed they should find the defendants guilty. They might, under that instruction, if the evidence warranted it, have found the defendants guilty of an assault or an assault and battery, but they could not find them guilty of the felony without proof of the intent to rob. The instruction was erroneous, and clearly misleading under the evidence in this record.

For the reasons stated, the judgment of the circuit court will be reversed and the cause remanded to the circuit court for another trial.

*Reversed and remanded.*